## Sanders v. Rose.

Oct. 26, 1943.

A. F. Childers for appellant.

Burke & Sanders for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The title to two acres of land located at the mouth of Pigeon Roost branch of Elkhorn creek in Pike county is in dispute.

Appellant, Nannie Sanders, and appellee, Lila Rose, own adjoining farms, and in various deeds of remote grantors Pigeon Roost creek is referred to as the dividing line between the two tracts of land. The controversy was brought about by a sudden change in the location of the thread of this stream near the point where it empties into Elkhorn creek. The mouth of the stream is now 500 or 600 feet above its former mouth. The appellant, who was the plaintiff below, alleged in her petition that she was the owner and in possession of a 150-acre tract of land which included the two acres in dispute. She set out numerous deeds

in her own and the defendant's chain of title, and then alleged that "the defendant is now wrongfully and unlawfully confusing the boundary line between their said properties, by claiming that Pigeon Roost Creek, as called for in these various deeds, is located at the place where the channel of said stream now runs, and not at the place where it was located when said deeds were made. She states that several years ago, but since Isom Potter purchased the lands deeded to defendant, Pigeon Roost Creek in time of high water changed its course for a distance of several hundred feet and now flows, and has since said change took place, over and across the lands claimed and owned by this plaintiff, leaving a strip of about two acres between the old channel where the creek was located at the time the said Isom Potter purchased said property and at the time his vendor, Roscoe Vanover, purchased the same, and she is claiming to be the owner of the property up to the present location of the creek and is thereby confusing the boundary line between their said farms, and is annoying this plaintiff in her quiet enjoyment and peaceful possession of her said farm, and is giving out in speech that she is the owner of the lands up to the channel of the stream of said Pigeon Roost Creek as now located, and is attempting to deprive this plaintiff of possession thereof, and is disturbing and annoying her in the quiet and peaceful possession of her property." In her answer and counterclaim the defendant asserted ownership of the two acres in dispute, and asked that her title thereto be quieted. In an agreed stipulation entered into before depositions were taken, it was stipulated and agreed that "the plaintiff is the owner of a tract of land located on Elkhorn Creek, in Pike County, Kentucky, known and spoken of in this record as the George S. Steele farm; that the defendant is the owner of a part of a tract of land known in this record as the John H. Vanover farm, and that these two farms adjoin, and that the only question for determination by the Court is the location of the common boundary line between these two adjoining tracts of land." It was stipulated that the plaintiff might produce and file as evidence certain named deeds in the two chains of title, and the stipulation continued: "The question to be determined is the location of Pigeon Roost Creek as referred to in these deeds." The chancellor found that the course of Pigeon Roost Creek did change at one time in one

night, but that the change occurred prior to the making of the deed from Roscoe Vanover, appellee's predecessor in title, to Isom Potter July 12, 1899, and that the stream as now located is at the same place it was then and forms the true dividing line between the parties. He dismissed the plaintiff's petition, and she has appealed. Appellee is the daughter of Isom Potter and she claims title under a deed from her father dated August 29, 1927.

Before discussing the evidence we shall dispose of two preliminary contentions of appellee. It is contended that this is an ordinary action in ejectment, prepared and tried in equity, and that under the rule that where an action in equity is, in effect, an ordinary action in ejectment the judgment of the chancellor must be treated as the verdict of a properly instructed jury and the judgment should be affirmed since the evidence is conflicting. The case of Reynolds v. Binion, 177 Ky. 189, 197 S. W. 641, is cited, but as pointed out in the opinion in that case the plaintiffs alleged that the defendants were in possession of the land, whereas in order to sue in equity to quiet title it is essential that plaintiffs be in possession of the land. In the present case the plaintiff alleged that she was in possession of the land, and, in effect, that the defendant by her claims was casting a cloud upon the plaintiff's title. The plaintiff prayed that "the true boundary line between their property in the deeds calling for Pigeon Roost Creek be established at the point where said creek was located at the time of the execution of said deeds," and for all proper and equitable relief. In her counterclaim the defendant alleged that she was the owner of the land in controversy, and asked that her title be quieted. The action was purely an equitable one. It is also contended by appellee that her plea of estoppel should have been sustained. The argument is based on these facts: In 1938 appellee filed an action in ejectment against Trimble Sanders, husband of appellant, and on a trial before a jury it was adjudged that Trimble Sanders had no title to or right of possession of the land now in controversy. Thereafter appellant brought this action. She was not a party to the ejectment suit and was not bound by the judgment. Appellee was not misled to her prejudice by appellant's failure to intervene and assert her claim in that action. No element of estoppel is present.

The chancellor conceded in his opinion that the proof established conclusively the fact of a sudden change in the course of Pigeon Roost creek, and turned his decision on the date of that change. In his opinion the weight of the evidence showed that the change occurred prior to July 17, 1899, the date of the deed from Roscoe Vanover to Isom Potter, and he adjudged the appellee to be the owner of the 2-acre strip of land between the former and the present channel of Pigeon Roost creek apparently on the theory that the description in the deed from Vanover to Potter included it, as Pigeon Roost creek was referred to as a boundary. We are unable to agree with the chancellor's conclusion as to the date of the change of the course of the stream. Appellee testified that she was five or six years old when her father purchased the Vanover farm, and that no change had occurred in the course of the stream within her recollection. Nancy Jane Potter, widow of Isom Potter and appellee's mother, testified that the course of the stream did not change after her husband bought the Vanover farm. John Henry Vanover, nephew of Roscoe Vanover, was asked where the creek ran at the time Isom Potter bought his uncle's farm, and he said he didn't know when Potter bought it. He later stated that the creek ran in its present channel when Potter bought the Vanover land. These were the only witnesses on the subject introduced by appellee. The appellant introduced fifteen witnesses, all old residents of the neighborhood, who testified concerning the sudden change in the course of the stream. Twelve fixed the date of the change from 34 to 38 years prior to 1939 when the depositions were taken. The remaining three witnesses estimated the elapsed time at about 50 years. One of these, William E. Childers, was asked when the change took place, and answered: ''Well, just to tell you the true date, I couldn't tell you, but it was along 1891 or 1892 or 1893, somewhere along there. I think there is a man in there that can tell you the exact date.'' Tabitha Steele, in answer to the same question, said: ''I can pretty near tell you. I just had one child when we bought that. I believe it's been about, I guess it's been over 50 years, I know it has.'' T. J. Mullins testified that he had been acquainted with the land in dispute 40 to 50 years, and that his first recollection about it was that Harve Gibson had a mill there and lived in a log house on this disputed piece of

land. Harve Gibson was one of appellant's predecessors in title. The witness was asked if the site of this old log house was cut off below the creek when the change took place, and the witness answered: "It's been about 50 some odd years, and when the change come afterwards it come down right-handed," and cut the old house off below the creek. The witness did not fix the date of the change as 50 years before the time he testified, but, he first knew the property 50 years before that time and the change occurred sometime afterwards. All of the fifteen witnesses introduced by appellant, including William E. Childers, Tabitha Steele, and T. J. Mullins, testified positively that the change in the creek occurred after Isom Potter moved onto the Vanover land. Appellee testified that her father lived on Boone creek before he bought the Vanover farm.

We think the weight of the evidence shows that the change occurred after July 17, 1899, the date of the Isom Potter deed, but even if it occurred prior to that date appellee has failed to establish title to the two acres of land in controversy. If the description in the deed from Vanover to Potter had included this land, adverse possession by Potter for the statutory period would have been necessary to perfect his title. Adverse possession is neither alleged nor claimed. Appellee admitted that the land had not been cultivated but said it had been used for pasturage purposes, but by whom or for how long does not appear. The deeds under which appellee claims show that the references to Pigeon Roost creek were to the channel of the stream as it was prior to the change. In the deed from John H. Vanover to his son, Roscoe Vanover, the first call reads: "Beginning at the mouth of the Pigeon Roost branch thence S up the Pigeon Roost branch meandering the same to the back line of the Madison line (survey)." This deed was executed December 26, 1885, admittedly before the change in the course of the stream took place. Roscoe Vanover conveyed the land to appellee's father, Isom Potter, July 17, 1899. The following calls appear in the deed: "Thence running along top of said ridge and up said ridge to near fork of Pigeon Roost Creek, thence along side of Pigeon Roost Creek to back line of Madison survey, thence with the line of said Madison survey to Pigeon Roost Creek thence down said Pigeon Roost Creek to Elkhorn Creek * * *." On August 29, 1927, Isom Potter conveyed to

appellee as her part of his estate 100 acres of the land conveyed to him by Roscoe Vanover. The description begins as follows: "Beginning at a mulberry standing in a garden near Pigeon Roost branch thence across the garden to the pickets." After several calls the description concludes: "With said line to the left fork of Pigeon Roost thence with same to the beginning corner." Appellee admits that the mulberry tree referred to in the deed stands near the old channel and is several hundred feet from the present channel of the stream. Obviously all of the deeds under which she claims refer to the channel of Pigeon Roost creek as it was prior to the sudden change whenever that occurred.

The judgment is reversed, with directions to enter a judgment in conformity herewith.